United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARRY JOSEPH HAZELAAR,                    No. C 03-4460 SI (pr)

        Petitioner,                    **ORDER DENYING PETITION FOR**
                                                    **WRIT OF HABEAS CORPUS**

   v.

MELVIN HUNTER,

        Respondent.

_____/

**INTRODUCTION**

      This matter is now before the court for consideration of the merits of Larry Joseph Hazelaar's <u>pro se</u> petition for writ of habeas corpus concerning the revocation of probation on his 2000 conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

      Hazelaar pled guilty to several charges, including use of tear gas (a felony), arising out of his voyeuristic activities on April 13, 2000. He was put on probation. Before the probationary period ended, he violated probation with another voyeurism crime in another county. His probation was revoked and he was sent to prison. In his federal habeas petition, Hazelaar claims that (1) the trial court improperly denied him a continuance so he could hire an attorney to replace his public defender, (2) his attorney was ineffective in that he did a poor job at the probation revocation hearing and did not try to withdraw Hazelaar's guilty plea to the

felony tear gas use charge when it was learned that Hazelaar didn't actually use the tear gas he possessed, and (3) he was improperly denied access to part of the transcript he needed for his appeal.

A.    The Crimes

The record on the circumstances of the crimes was limited because Hazelaar pled guilty and no trial was held.  The description of Hazelaar's criminal activity in the California Court of Appeal's decision was taken from the probation officer's petition for modification of terms of probation:

> "On 4/13/00 police responded to the victim's residence, and found the victim's father struggling with the defendant, after a brief struggle police were able to detain the defendant.  The victim and her father reported seeing the defendant on numerous other occasions prowling and peeking around their property.  On this date, the father reported seeing the defendant outside his daughter's window, he confronted him, and the defendant tried to spray him with Mace.  A struggle ensued, the mother called the police, and the father was able to detain the defendant until police arrived.  The [14-year old] victim reported that she had showered and was changing clothes when she heard a struggle outside her window.  [¶]  Police found the defendant with a police scanner, which was on, tuned to the appropriate police district, and equipped with an earpiece, a can of Mace, and bottles filled with lubricating lotion.  Police noted the defendant was wearing loose fitting pants and no undergarments, and they found foot impressions outside the victim's window that were similar to the defendant's.  The defendant was arrested and booked into County Jail."

Cal. Ct. App. Opinion, p. 2 (quoting probation officer's April 23, 2001 Petition For Modification of Terms of Probation); see also CT 39 (Dec. 1, 2000 report of probation officer, p. 2 (description of offense includes statement that, when Hazelaar was confronted by the victim's father, he "reached into his waistband and pointed a canister of what appeared to be mace at him. Mr. Garcia said that the defendant may have discharged the canister at him but at that moment he grabbed the defendant and a struggle began."))

B.    State Court History

The amended felony complaint charged Hazelaar with five counts: count 1 - unauthorized use of tear gas (Cal. Penal Code § 12403.7(g) - a felony), count 2 - selling, possessing, transporting tear gas by a felon (§ 12420), count 3 - prowling and peeking (§ 647(i)), count 4 -

2

1   interception of public safety radio service communication (§ 636.5), and count 5 - prowling (§

2   647(h)).  CT 7-9.  The sentencing range for count 1 was 16 months or 2 or 3 years in prison and

3   the penalty for each of the four misdemeanor counts was not in excess of a year in county jail.

4   See Cal. Penal Code §§  19.2, 12403.7(g).

5          On July 19, 2000, Hazelaar pled guilty.  No transcript of the entry of plea is included in

6   the record before this court.  The clerk's minutes indicate that count 5 was dismissed, Hazelaar

7   pled guilty to the remaining counts on the condition that no state prison term would be imposed,

8   and the prosecutor objected to the "no state prison" term.  CT 31.  The minutes also show that

9   a factual basis for the plea was found, i.e., the police report.  Id.  On December 1, 2000, Hazelaar

10  was put on probation for three years.  CT 80.  He was sentenced to six months in jail, although

11  the jail sentence was stayed.  See id.

12         Within four months, Hazelaar violated probation.  He was arrested on March 25, 2001,

13  by the Butte County Sheriff's Department for a new prowling incident.  As in the Santa Clara

14  County incident, Hazelaar was not wearing underwear and had lubricant and pepper spray with

15  him when arrested.  A probation hold was put on him, he pled guilty on April 17, 2001, and was

16  committed to 36 days in county jail on the Butte County offense.

17         Two separate probation violations were identified in the petition for modification of terms

18  of probation in Santa Clara County:  (1) the commission of the Butte County crime and (2)

19  leaving Santa Clara County without permission of the probation officer.  See CT 82-83.

20         At the August 6, 2001 probation revocation hearing, Hazelaar was found to have violated

21  his probation conditions.  Probation was revoked and he was sentenced to 2 years in state prison.

22  Hazelaar, who was 58 years old at the time of the Santa Clara County incident, had a long

23  criminal history.  He had two felony convictions in Chico and two in Santa Clara County.  He

24  also had eighteen misdemeanor convictions, including convictions for prowling, theft, battery,

25  loitering, tear gas possession, shoplifting, possession of a controlled substance, and resisting

26  arrest.  Cal. Ct. App. Opinion, p. 3.  Hazelaar had been under the care of a psychiatrist for 20

27  years and was taking Thorazine to treat his schizophrenia.  Id.

28

3

1

## JURISDICTION AND VENUE

2     The court has subject matter jurisdiction over the petition for writ of habeas corpus under

3 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged

4 conviction occurred in Santa Clara County, California, within this judicial district.  28 U.S.C.

5 § 84, 2241(d).

6

7

## EXHAUSTION

8     Prisoners in state custody who wish to challenge collaterally in federal habeas

9 proceedings either the fact or length of their confinement are required first to exhaust state

10 judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

11 highest state court available with a fair opportunity to rule on the merits of each and every claim

12 they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  State judicial remedies have

13 been exhausted for the claims presented in the petition.

14

15

## STANDARD OF REVIEW

16     This court may entertain a petition for writ of habeas corpus "in behalf of a person in

17 custody pursuant to the judgment of a State court only on the ground that he is in custody in

18 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

19 petition may not be granted with respect to any claim that was adjudicated on the merits in state

20 court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was

21 contrary to, or involved an unreasonable application of, clearly established Federal law, as

22 determined by the Supreme Court of the United States; or (2) resulted in a decision that was

23 based on an unreasonable determination of the facts in light of the evidence presented in the

24 State court proceeding."  28 U.S.C. § 2254(d).

25     "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

26 arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

27 if the state court decides a case differently than [the] Court has on a set of materially

28

4

indistinguishable facts."  <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  <u>Id.</u> at 409.

# DISCUSSION

A.     <u>Denial Of Request For Continuance</u>

The California Court of Appeal described the circumstances of the continuance requests:

Counsel was appointed for defendant, and he was arraigned on a violation of probation on April 26, 2001.  On June 20, 2001, a formal hearing on the violation of probation was set for August 6.  Another hearing, denominated an "identification of counsel" hearing was held on July 17, 2001.  At that time, defendant asked the court for a continuance in order that he might retain private counsel, Mr. Delizonna, or represent himself with Mr. Delizonna's assistance.  The court responded that defendant could not have Mr. Delizonna working on his case if he chose to represent himself.  However, the court also expressed its concern, "I want you to have a lawyer.  You're going to have a public defender at this time.  And Mr. Delizonna, <u>if he comes in</u> at an appropriate time, might be able to substitute in, if he wants and doesn't delay the hearing."

At that point, defendant made a <u>Marsden</u> motion to substitute appointed counsel.  After a closed hearing at which defendant explained that he did not communicate well with the public defender and that he did not knowingly enter into his plea to the underlying offenses, the court denied the motion.  Defendant explained that he had made efforts to obtain retained counsel.  He explained, "I've gotten on the phone, and what happened is with Mr. Delizonna, it was on the 4th of July, and by the time I knew that I couldn't make the payment that way, it was too late.  And all I got to do is, I ask you for a couple of phone calls to phone the bank and get it taken care of and make the payment.  I think I would feel comfortable with him."

The court told defendant it was going to "go ahead and leave the case as previously set for hearing with the current attorney status.  [¶] . . . [I]f Mr. Delizonna <u>wants to come in</u>, have him contact us right away to set a date."  (Emphasis added.)

On August 1, 2001, Harry Delizonna filed a motion to disqualify the trial judge, which was denied as untimely.

5

1

2

3

> Thereafter, on August 6, 2001, defendant appeared for the revocation hearing with his public defender. He once again asked for a continuance so that he could obtain another attorney. The court denied his request, noting that the district attorney was ready, his attorney was ready, and witnesses were all present and ready to testify. At that point, defendant renewed his request to represent himself, explaining that he would need three weeks to prepare. The court denied his request.

4

5

6

7

8

9

10

11

Cal. Ct. App. Opinion, pp. 3-4 (footnote omitted). The California Court of Appeal rejected Hazelaar's claim that the trial court erred in denying his request for a continuance. The state appellate court's discussion focused on state law, which requires a court to exercise its discretion after considering various factors, such as the anticipated benefit to defendant and the likelihood that such benefit would result from a continuance, as well as the burden on witnesses, jurors, and the court, and whether substantial justice will be imposed or defeated by granting the continuance. The court found no abuse of discretion in denying the request for a continuance.

12

13

14

15

16

17

18

19

> In the instant case, defendant had been represented by appointed counsel from the time of his arraignment. At the Marsden hearing, defendant stated that he had made some preliminary effort to retain Mr. Delizonna on the 4th of July, but he did not recount anything further that he had done in the ensuing two weeks. The court, as noted above, did not say that Delizonna could not come in as retained counsel. Rather, it said that if he came in, he should immediately contact the court, and he should be prepared to proceed on August 6, which was some three weeks away. Defendant had pleaded guilty to both the underlying offense and the new Butte County offense, and he did not deny that he was in Butte County without the permission of his probation officer. There is no indication that this is a case that would take a great deal of preparation and require a continuance. Moreover, defendant never outlined steps he had taken to seek substitute counsel. The trial court, in denying defendant's Marsden motion, implicitly rejected the reasons defendant was dissatisfied with appointed counsel and sought retained counsel. Defendant does not now claim that the trial court erred in denying the Marsden motion. Finally, we note that the victim's father had been subpoenaed and ordered to appear at the hearing on August 6, and was present and ready to testify.

20

Cal. Ct. App. Opinion, pp. 8-9.

21

22

23

24

25

26

27

"The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . Contrariwise, a myopic insist-ence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge

28

6

1    at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (citations

2    omitted); see also Morris v. Slappy, 461 U.S. 1, 11-12 (1983) ("broad discretion must be granted

3    trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon

4    expeditiousness in the face of a justifiable request for delay' violates the right to assistance of

5    counsel").  Additionally, even if the continuance was improperly denied, habeas relief is not

6    available unless there is a showing of actual prejudice to petitioner's defense resulting from the

7    refusal to grant a continuance. See Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997).[1]

8        In considering whether the denial of a continuance implicating a defendant's right to

9    counsel is an abuse of discretion, the Ninth Circuit has applied these factors: (1) whether the

10   continuance would inconvenience witnesses, the court, counsel, or the litigants; (2) whether

11   other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4)

12   whether the delay is the defendant's fault; and (5) whether a denial would prejudice the

13   defendant. See United States v. Mejia, 69 F.3d 309, 314 n.5 (9th Cir. 1995) (citing United States

14   v. Robinson, 967 F.2d 287, 291 (9th Cir. 1992)); see also United States v. Garrett, 179 F.3d

15   1143, 1145-47 (9th Cir. 1999) (en banc).

16       The application of the factors identified by the Ninth Circuit to Hazelaar's claim leads

17   to the conclusion that this was not a case of a judge with a "myopic insistence upon

18   expeditiousness in the face of a justifiable request for delay." Ungar, 376 U.S. at 589.  There

19   was no due process violation and no violation of the  Sixth Amendment right to counsel.

20       Hazelaar urges that the requested continuance would not have interfered with the orderly

21   and expeditious administration of justice, but the record indicates otherwise.  The trial court had

22   made the August 6 date available for a probation violation hearing in Hazelaar's case.  Five

23   people were present and ready to go on that day:  the judge, the prosecutor, the public defender,

24

25       [1]The Supreme Court recently held that the erroneous deprivation of a criminal defendant's choice
     of counsel was structural error not subject to harmless error review.  See  United States v. Gonzalez-
26   Lopez, No. 05-352, slip op. 1, 9 (U.S. June 26, 2006).  That case does not affect the analysis here
     because Hazelaar's case concerns the denial of a continuance that allegedly impacted his search for
27   counsel and not an outright denial of counsel of choice.  Gonzalez-Lopez, as the Court specifically
     noted, was not a case about the court's power "to make scheduling and other decisions that effectively
28   exclude a defendant's first choice of counsel."  Id. at 12.

7

1   the victim's father (who had been subpoenaed), and the probation officer.  Hazelaar also had
2   been brought from jail for the hearing.  Continuing the probation revocation hearing would have
3   inconvenienced all these persons and would have disrupted the court's schedule.  The attendance
4   of the victim and her father illustrates a common problem that can occur when a court date
5   repeatedly is changed: some people just stop showing up for the hearings.  The victim's father
6   explained why his daughter was not present on the day of the probation revocation: "we've been
7   to court approximately four or five times now, waiting for the matter to come up, and it's been
8   16 months, I believe.  She didn't want to come today because she didn't want to go through the
9   disappointment again."  Exh. I1 8/6/01 RT 35.  Continuing the matter again would further
10  inconvenience the father and daughter victims and increase the possibility of interfering with the
11  administration of justice by increasing the likelihood of absent witnesses at the proceeding.

12      No other continuances of the probation revocation hearing had occurred.  This factor
13  weighs in favor of Hazelaar.

14      Hazelaar had not shown a legitimate reason for the delay.  Although obtaining counsel
15  of choice is in theory a very legitimate reason, the circumstances here indicate that Hazelaar's
16  alleged efforts to obtain counsel did not provide a legitimate reason.  Hazelaar apparently had
17  expressed a desire to be represented by a hired attorney instead of the public defender at the June
18  20 hearing and a hearing had been set for July 17 to identify that attorney.  Notwithstanding
19  having had 27 days to do so, Hazelaar had not accomplished the hiring of an attorney by the July
20  17 hearing.  Hazaelaar complained that he had an attorney in mind but needed to make a couple
21  of phone calls to a bank to arrange to pay the attorney.  RT 2.  He asked for a continuance of the
22  August 6 hearing date, and the court rejected the request, leaving the matter on calendar for
23  August 6.  The judge appeared to believe Hazelaar was trying to manipulate the system.  <u>See</u>
24  Exh. I2, RT 5.  As the state appellate court noted, Hazelaar offered no explanation of what he
25  had been doing to try to retain counsel in the two weeks since his preliminary contact with
26  Delizonna on July 4.  When the judge denied the July 17 request for a continuance, Hazelaar
27  then tried to argue that he wanted to represent himself, but lost interest when the court told him
28

8

he could not represent himself temporarily and then substitute in attorney Delizonna if that would delay the August 6 hearing.  He then made a <u>Marsden</u> motion, which was denied. Hazelaar, who has a long criminal record, probably was aware that stalling is often a helpful tactic for a criminal defendant.  Interestingly, despite the state appellate court's explicit mention of Hazelaar's failure to explain what he had been doing to try to obtain counsel after July 4, Hazelaar did not provide any explanation in his petition for review or in his federal habeas petition.  Other than a disqualification motion, attorney Delizonna never filed any motion that indicated he had been retained in a timely manner and actually needed more time to prepare for a revocation hearing.

The delay is attributable to Hazelaar.  Although Hazelaar requested the continuance before the eve of trial, he never explained – to the trial court, to the state appellate court, or to this court – why  he had done so little to obtain counsel in the 6-7 weeks between expressing an interest in private counsel and the date of the probation revocation hearing.  As discussed in the analysis of the ineffective assistance claim, the issues were not so difficult that an attorney would need much time to prepare for the probation revocation hearing.

Finally, the denial of the continuance did not prejudice Hazelaar.  An attorney's ability to aid a client under the circumstances present here would be quite limited.  Hazelaar has not indicated that he had any real defense to the two alleged violations of probation.  In light of the prowling conviction in Butte County that occurred while he was on probation, it would be rather difficult for him to challenge the allegation that he had committed another crime or that he had been outside Santa Clara County -- both violations of the terms of his probation.  There might be some probation conditions as to which an alleged violation of the condition is debatable, but this wasn't such a case.  At a probation revocation hearing, guilt on the original offense would not be relitigated and the focus instead would be on whether he violated a condition of probation and, if so, the appropriate remedy.

Although he does not articulate the point clearly, Hazelaar apparently wanted to hire an attorney to help him back out of his guilty plea based on his belief that he was factually innocent

of the charge of use of tear gas.  As discussed in more detail later in the analysis of the ineffective assistance of counsel claim, it was too late to move to withdraw the guilty plea under state law and, even if not too late, the motion would have failed.  Furthermore, Hazelaar has not shown that his desire to back out of a guilty plea was a legitimate reason to delay the probation revocation hearing or that the motion to withdraw the plea had to be made at the probation revocation hearing or not at all.

Hazelaar told the court he needed a continuance to hire a private attorney.  But he never said anything in the trial court, the appellate court or the federal habeas court that indicated he was being at all diligent in his effort to hire counsel.  Hazelaar's foot-dragging in hiring counsel, plus his half-hearted Marsden motion, plus his musings about representing himself, plus his untimely motion to disqualify counsel, cumulatively suggest a strong desire to try anything to delay the probation revocation hearing and likely trip to prison.  But a desire to avoid the imposition of punishment at a hearing is not a legitimate reason to delay that hearing.  The California Court of Appeal's rejection of Hazelaar's claim that his rights to due process and to counsel were violated was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court.  Hazelaar is not entitled to the writ.

B.    Ineffective Assistance Of Counsel.

Hazelaar claims that he received ineffective assistance of counsel.  He argues that counsel was deficient in not moving to withdraw the guilty plea he had entered almost a year before the probation revocation proceeding.  He also argues that counsel generally did a poor job of representing him at the probation revocation proceeding.

In order to prevail on an ineffective assistance of counsel claim, Hazelaar must establish two things.  First, he must show that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In evaluating counsel's performance, the court must presume "that counsel's conduct falls within the wide range of reasonable professional assistance

10

1  . . ." <u>Id</u>. at 689.  Second, Hazelaar must establish that he was prejudiced by counsel's deficient

2  performance, i.e., show that "there is a reasonable probability that, but for counsel's

3  unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.  A

4  reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id</u>.

5

6          1.          <u>Failure To Move To Withdraw Guilty Plea</u>

7          Hazelaar contends that he received ineffective assistance of counsel in that counsel failed

8  to try to withdraw his guilty plea.  In a related argument, he states that counsel should not have

9  been arguing that Hazelaar was innocent of the use of tear gas charge for the first time at the

10  sentencing phase of the probation revocation hearing.

11          Defense counsel did not act deficiently in not moving to withdraw the guilty plea under

12  the circumstances.  First, it was too late under state law to move to withdraw the plea because

13  he was sentenced on December 1, 2000, at which time the imposition of sentence was suspended

14  for the probationary period -- more than six months before July 2001, when Hazelaar expressed

15  an interest in withdrawing his guilty plea.  <u>See</u> CT 80; Cal. Penal Code § 1018 ("On application

16  of the defendant at any time . . .  within six months after an order granting probation is made if

17  entry of judgment is suspended, the court may  . . . for a good cause shown, permit the plea of

18  guilty to be withdrawn.")   Second, even if it was not too late to make the motion, there was no

19  evidentiary support for a motion to withdraw the guilty plea before the probation revocation

20  hearing began. Hazelaar's assertion of actual innocence would not have provided the good cause

21  to withdraw the plea before the revocation hearing because the court that took his guilty plea

22  found there existed a factual basis for his plea and determined that he had waived his

23  constitutional rights before entering the plea.  The evidence available to counsel was the police

24  report (the contents of which were repeated in the sentencing report) that Garcia reported that

25  Hazelaar had pointed the can of mace at him when confronted.  The police report provided a

26  factual basis for a finding of guilt on the charge of use of mace.  CT 31 (court taking the guilty

27  plea found that the police report provided a factual basis for the plea).  An attorney reading the

28

11

police report would not see a reasonable ground to move to withdraw the guilty plea.[2]   Third, even after Garcia testified at the probation revocation hearing that the can of mace fell out of Hazelaar's clothes and was not pointed at him, there was at best a conflict in the evidence: Garcia's statement to the police at the time of the incident was inconsistent with his testimony at the probation revocation proceeding.  Although Garcia's statements were inconsistent, no one ever determined that the earlier one was wrong and the later one was right.  Fourth, although Hazelaar urged his probation revocation counsel that he had not used the pepper spray, the fact remained that he had pled guilty and had no reasonable explanation for why he pled guilty if he was not.  His admission of guilt on the charge "carr[ied] a strong presumption of verity" and "constitute[d] a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Hazelaar's assertion that he was confused at the time he pled guilty would not provide a sufficient reason to set it aside especially since he made no effort to protest the guilty plea during the several months the favorable sentence worked to his advantage and did not protest it until he violated probation and faced a possible prison sentence.  Fifth, Hazelaar has not asserted here or on appeal that the guilty plea was constitutionally deficient in that it was unknowing or involuntary or was the product of ineffective assistance of counsel at the time it was entered.  He expressed satisfaction with the representation by the attorney who advised him when he entered the plea.  See letter filed by Hazelaar on March 23, 2004 (docket # 12), p. 2 ("The problem is the victim wasn't questioned, no preliminary hearing which would have brought this fact out.  I'm not blaming the first attorney, I myself should have brought this fact out to him, however it was brought out before the probation violation Judge

---

[2]Hazelaar's factual innocence claim found new support at the probation revocation hearing when Garcia (the victim's father) testified that Hazelaar was fumbling under his clothes when the tear gas canister fell out rather than that Hazelaar pointed the container at him, as the police report had recorded his statement when the incident occurred.  There is no evidence that Hazelaar knew before the August 6 hearing that the victim's father would provide these helpful statements.  A statement unknown to Hazelaar cannot reasonably be said to have been a basis for his claim of factual innocence.  Had Hazelaar been telling his attorney that he was factually innocent before the day of the hearing, that attorney would have had only Hazelaar's word balanced against Hazelaar's entry of a guilty plea and a police report that indicated he used the mace on the victim's father.  Hazelaar did not blame the attorney who represented him at the guilty plea and apparently did not even mention to the attorney that he was not using tear gas.  See letter filed by Hazelaar on March 23, 2004 (docket # 12).

Fox"); id. at 3 ("I mistakenly let the first public defender Mr. Nino plead me guilty, I was somewhat confused, however, it was a fair disposition except for the tear gas charge"); see also RT 10 (after judge noted that earlier defense counsel had "done a pretty good job" for Hazelaar in the past, Hazelaar stated, "I don't intend to complain about him.")

Hazelaar argues that the can of mace recovered at the scene of the crime still has an unbroken seal. See Traverse Suppl. (Docket # 37), p. 1. The court understands this to be another reason Hazelaar thinks counsel should have moved to withdraw the guilty plea. The argument would be unhelpful because a person need not squirt or discharge the pepper spray canister to be guilty of using pepper spray under California law. "[T]o be guilty of the unlawful use of a tear gas weapon, it is unnecessary that the weapon be either loaded or operable." People v. Hamilton, 61 Cal. App. 4th 149, 151 (Cal. Ct. App. 1998). In Hamilton, the court likened the use of a tear gas weapon to use of a firearm. "The word 'use' in the context of weapon statutes uniformly and unambiguously means the intentional display of the weapon in a menacing manner or the intentional firing or discharge of, or the intentional striking of a human being with the weapon." Id. at 155. Because the tear gas canister need not have been loaded or operable to be used, the fact that the seal was unbroken on Hazelaar's can of mace did not prove that he did not use it. Merely pointing it at the victim's father would be use of the tear gas.

Hazelaar also seems to urge that counsel should have argued that he was innocent because his can of mace wasn't covered by the tear gas statute. See Traverse (docket # 36), pp. 1-2; Traverse Suppl. (Docket # 37), p. 1. Again, he is wrong on the law: "Chemical mace is tear gas within the meaning of this statute." People v. DeLaCruz, 20 Cal. App. 4th 955, 960 (Cal. Ct. App. 1994) (considering Cal. Penal Code § 12401's definition of tear gas).

Counsel's statement at the probation revocation hearing that he could not "see any basis for attempting to [undo] the plea" was a reasonable assessment of the situation. RT 11. Because the challenge to the guilty plea would have been futile, Hazelaar cannot show deficient performance by the public defender who represented him in connection with the probation revocation proceedings. Cf. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take

13

1   futile action can never be deficient performance).  The futility of the challenge also shows that

2   there was no resulting prejudice to Hazelaar.  His ineffectiveness claim thus falls on both

3   <u>Strickland</u> prongs.    The  state  court's  rejection  of  the  claim  was  not  contrary  to  or  an

4   unreasonable application of <u>Strickland</u>.

5

6          2.      <u>Representation At Probation Revocation And Sentencing Hearing</u>

7          In addition to complaining about counsel's failure to move to withdraw the guilty plea,

8   Hazelaar contends that counsel did a poor job in general in representing him at the probation

9   revocation hearing.

10          Hazelaar suggests that counsel was deficient in failing to present a defense to the

11   probation violation charges.  Hazelaar does not, however, indicate what such a defense might

12   be.  As the California Court of Appeal noted, Hazelaar had been "out of [the] county without

13   permission  and  he  committed  another  crime.   Both  were  unequivocally  violations  of  his

14   probation."  Cal. Ct. App. Opinion, p. 10.  He has shown neither deficient performance nor

15   resulting prejudice in counsel's actions with regard to the charge that he had violated probation.

16          Hazelaar also contends that counsel's argument at the probation revocation hearing

17   amounted to almost no defense.  This court disagrees.  The brief argument that defense counsel

18   made at the probation revocation hearing reflected a reasonable strategy to concede that Hazelaar

19   had violated probation and instead argue that the original crimes and probation violations were

20   rather minimal and did not warrant a prison term.  In light of the rather clear-cut evidence that

21   Hazelaar had violated probation, defense counsel adopted the well-worn strategy of foregoing

22   argument on a meritless point to enhance his credibility with the judge on a stronger point, i.e.,

23   whether prison was appropriate under the circumstances.  Counsel's general theme was that

24   Hazelaar was a non-dangerous voyeur who looked but did not act.  <u>See</u> 8/6/01 RT 50-51.  On

25   that theme, counsel argued that Hazelaar's record was somewhat comforting in that "it seems

26   clear that Mr. Hazelaar only goes so far, and then he doesn't go any further," that the person

27   most in danger from Hazelaar's behavior was Hazelaar himself (i.e., it was a "miracle that

28

nobody has shot him" when he was lurking on residential property), and that he had never used the tear gas or a weapon. Id. at 51.  Counsel tried to make his client more sympathetic because he had a mental health problem (i.e., an axis I diagnosis) and had been in chronic pain. Id. The facts common in the Santa Clara and Butte County incidents could reasonably suggest that, if not interrupted, Hazelaar was preparing to sexually assault the objects of his voyeurism. Counsel's efforts to steer the court away from focusing on what crimes might have developed and to make Hazelaar's obvious voyeuristic tendencies seem less troubling were in furtherance of a reasonable strategy and did not amount to deficient performance.  Not only was there no deficient performance, there does not appear to have been any prejudice resulting from the strategy.

The California Court of Appeal discussed only one aspect of counsel's alleged ineffectiveness.  The court reasonably determined that there was no deficient performance or resulting prejudice with respect to counsel's attention to Hazelaar's mental health problems. The court found that counsel did alert the court to Hazelaar's medical records and axis I diagnosis. The appellate court noted that the sentencing court is presumed to have read the probation report which contained the doctor's comment. Cal. Ct. App. Opinion, p. 10.  The appellate court determined that there was no prejudice because the sentencing court did in fact consider Hazelaar's "occasional mental state" in sentencing him to the middle term in prison.  See id.

Even though counsel did urge in his argument regarding sentencing that the tear gas had not been used, this does not reflect deficient performance.  Rather, it was just one of several parts of counsel's argument downplaying the seriousness of Hazelaar's behavior; that is, counsel argued that the lack of use of tear gas showed that Hazelaar was a non-dangerous voyeur.  The helpful information was learned by counsel when Garcia testified at the probation revocation hearing, just minutes before counsel made the argument that referenced it.  Thus, while Hazelaar points to counsel's argument on this point as evidence of a complete lack of understanding of Hazelaar's case, this court sees the argument as a reasonable response to a newly revealed fact rather than a failure to understand an alleged problem with the guilty plea.

1    Hazelaar is not entitled to the writ on his ineffective assistance of counsel claims.

2

3    C.    Transcripts

4    Hazelaar claims that he was denied "access to some pages of the transcript of the criminal

5    proceedings."  Amended Petition (docket # 20), p. 6.  He contends that "some pages of my

6    criminal proceedings are missing, such as the ones where hired attorney Delizonna walked off

7    the case, saying 'he wanted nothing to do with it' and making a timely Cal. Civil Procedure

8    Code [section] 170.6 motion and it being denied."  Id.

9    There is evidence from one which can conclude that a transcript is missing.  Hazelaar's

10   appellate counsel sought to augment the record on appeal with several items, including the

11   transcript of a hearing on the disqualification motion on August 6, 2001.  Resp. Exh. G, pp. 1-2

12   (appellate counsel explains that record needs to be augmented because "the current record on

13   appeal includes only the afternoon session of August 6, 2001").[3]   The public defender's

14   comments at the probation revocation hearing indicate that there earlier had been some

15   consideration of the disqualification motion, although his comments are ambiguous as to whether

16   the court summarily denied the motion or whether attorney Delizonna argued the disqualification

17   motion.[4]  Hazelaar reports that, when the judge denied the disqualification motion and it became

18

19   _____

20   [3]Appellate counsel also sought to augment the record with transcripts from other hearings, but
     those are not relevant to the hiring of attorney Delizonna or the continuance motion.  The state appellate
21   court denied the request to augment the record, although it sua sponte augmented the record to include
     the transcript of the December 1, 2000 sentencing hearing at which Hazelaar was put on probation.

22   The reporter's transcript for August 6, 2001 is marked as Volume II and starts on page 16.  See
     Resp. Exh. I1.  This would suggest a missing transcript for the first part of the day but for the fact that
23   the reporter's transcript for July 17, 2001 is marked as Volume I and includes pages 1-15.  There is not
     necessarily a missing transcript for August 6, 2001, and proceedings on the disqualification motion may
24   have taken place in the judge's chambers without a court reporter present.

25   [4]The Supreme Court cases concern the requirement that states provide free transcripts when
     necessary so that indigent appellants are not left with an inadequate record due simply to their inability
26   to pay for it.  This court assumes, without deciding, that the denial of the motion to augment the record
     would be a denial of transcripts that could amount to a constitutional error.  The record is far from clear
27   that Hazelaar's failure to have the transcript included as part of the appellate record was a result of his
     indigence.  That is, the record before this court does not include an explanation of why the proceeding
28   on the motion to disqualification was not part of the record originally ordered for use on appeal.

1   clear that a continuance would not be granted, attorney Delizonna decided not to represent

2   Hazelaar and left the courthouse.

3       If state law permits a direct appeal of a criminal conviction, due process and equal

4   protection require that indigent criminal defendants be provided with free transcripts or other

5   effective means for use in obtaining adequate and effective appellate review.  See Britt v. North

6   Carolina, 404 U.S. 226, 227 (1971); Griffin v. Illinois, 351 U.S. 12, 18-20 (1956) (per curiam).

7   The court need only provide an indigent defendant with "a record of sufficient completeness"

8   to prepare an appeal; irrelevant or extraneous portions of the transcript may be omitted.  Mayer

9   v. City of Chicago, 404 U.S. 189, 194-95 (1971); see also Tedford v. Hepting, 990 F.2d 745, 747

10  (3d Cir. 1993) (constitutional violation occurs only if inaccuracies in transcript adversely affect

11  appellate review in state court).

12      The starting point is to determine that a court proceeding occurred on August 6, 2001 that

13  was not transcribed for the appeal.  Although this court finds that a proceeding occurred, the

14  court cannot determine how long it lasted, who was present, whether it was reported, and

15  whether it was held in the courtroom or chambers.  The determination that there was a

16  proceeding on the disqualification motion is based on the public defender's comments,

17  Hazelaar's statements in this action, and the clerk's minutes for August 6, 2001.[5] Having

18  determined that there was a proceeding for which there is not a transcript does not necessarily

19  help Hazelaar.  Habeas relief is available to Hazelaar only if the absence of the transcript

20  actually mattered.

21      Hazelaar has not shown that he was denied a transcript necessary to obtain adequate

22  appellate review of his case.  Insofar as he wanted to appeal the denial of the disqualification

23  motion, there was a sufficient record because the record on appeal shows that the motion was

24

25      [5]The state appellate court's rejection of the motion to augment the record did not
    determine that no proceeding had occurred but only that the record did not need to be
26  augmented.  There was no factual determination made by the state court and therefore this court
    is not precluded by 28 U.S.C. § 2254(e) from finding that there was a proceeding on the
27  disqualification motion and that attorney Delizonna decided not to represent Hazelaar after the
    disqualification motion was denied.
28

rejected as untimely.  <u>See</u> CT 110 (August 6, 2001 clerk's minutes - the box for "hrg on motion"

is checked and has a handwritten notation, "170.6 CCP declaration stricken - not timely filed").

Regardless of whether a hearing was held or the motion was summarily denied without

argument, it is not disputed that the motion was denied as untimely, and there has been no

showing that the transcript of the proceedings was necessary to determine if the motion was in

fact timely and therefore improperly denied.  Hazelaar also did not identify any other way in

which the transcript would have aided him in an appeal from the denial of the disqualification

motion.

Hazelaar's real concern about the transcript's absence appears to relate to his motion for

a continuance of the probation revocation hearing.  The denial of the disqualification motion

meant that there would be no need for a new judge, so there would be no continuance of the

probation revocation hearing.  The absence of a continuance mattered because attorney

Delizonna did not want to represent Hazelaar unless the probation revocation hearing was

continued to a later date. Hazelaar has not shown that the transcript of the proceeding was

necessary to obtain effective appellate review of the denial of the motion for a continuance and

attorney Delizonna's departure from the case.  The record on appeal included the three-sentence

declaration in support of the disqualification motion Delizonna filed on August 1, in which he

stated that he had been retained as counsel for Hazelaar and made a summary allegation on

information and belief that Judge Fox was biased.  <u>See</u> CT 88.  The record does not otherwise

show any activity by attorney Delizonna.  The appellate court's recitation of the facts relevant

to the continuance motion noted that the disqualification motion had been filed by Delizonna and

denied.  The appellate court also noted that, despite several efforts to obtain Delizonna's

services, Hazelaar had unsuccessfully attempted to have Delizonna represent him in the

probation revocation proceedings.  Hazelaar did not show here or in state court that the absence

of the transcript of the hearing on the disqualification motion prevented him from asserting a

claim on appeal relating to the denial of the continuance or Delizonna's decision not to represent

him. Hazelaar was able to and did use the information in his argument that Delizonna would

have been able to represent him if he had obtained a continuance.  The absence of a transcript did not prevent Hazelaar from obtaining a declaration from Delizonna for use in state court or federal habeas proceedings.

The absence of a transcript of the disqualification motion proceedings did not violate due process and was harmless error, if any error.  The absence of the transcript did not impede Hazelaar's ability to obtain effective and adequate appellate review of his claims concerning the denial of the disqualification motion, the denial of the motion for a continuance, and attorney Delizonna's unavailability/unwillingness to represent him when the trial court denied the requested continuance.  He is not entitled to the writ on this claim.

D.    Miscellaney

In numerous filings, Hazelaar has complained he has been in custody for 4-5 years following the revocation of his probation, which would be a concern as he was sentenced to 2 years in prison.  However, a recent filing indicates that he is in Atascadero State Hospital pursuant to a civil commitment decision, and not pursuant to the sentence imposed when probation was revoked in 2001.  To the extent Hazelaar wants to challenge the decision to civilly commit him or to challenge the execution of his sentence, he may file a petition for writ of habeas corpus in federal court, but not until he exhausts state court remedies as to every claim asserted in such a petition.  If Hazelaar wishes to challenge the execution of his sentence, he should file his federal petition in the Central District of California in Los Angeles, because the facility (Atascadero) at which he is confined is within the venue of the Central District of California.

Hazelaar requested information and forms for filing an appeal and requesting a certificate of appealability.  In general, an appeal must be commenced by filing a notice of appeal with the district court clerk within 30 days of entry of the judgment.  See Fed. R. App. P. 3, 4.  A request for certificate of appealability should be made in conformance with 28 U.S.C. § 2253(c).  The court does not provide forms for appeals or forms for requests for certificates of appealability,

19

nor does it provide copies of the Federal Rules of Appellate Procedure or sections of the United States Code.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED:  July 5, 2006

_____
SUSAN ILLSTON
United States District Judge

20